The next case this morning is 522-0635, Bauer, etc. v. Gillham. Arguing for the appellant is Colby Smith-Peters. Arguing for the appellee is Jared Montgomery. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, your honor. Good morning, your honor. Good morning. Mr. Smith-Peters, are you ready to proceed? Yes, your honor. Then go right ahead. Okay. May it please the court. This appeal involves Supreme Court Rule 103B, a dismissal with prejudice for lack of reasonable diligence in serving the defendant. This is a fact-intensive inquiry, and the Supreme Court rule dictates that the court must review the totality of the circumstances. Supreme Court Rule 103B goes on to state that, considering the exercise of reasonable diligence, this court shall review the totality of the circumstances. Given that it's a fact-intensive inquiry, I think it's important to give a quick rundown of the facts of the case. On August 13, 2017, the plaintiff was in an auto accident in Gallatin County, Illinois, with the statute of limitations running August 13, 2019. The plaintiff then hired an attorney law firm in June of 2019, about one month before the statute of limitations was to run. August 12, 2019, the complaint was filed. August 30, 2019, negotiations with the insurer began. Demand was sent to the liability insurer with a note that the complaint was filed, but an amicable solution was going to be tried, given the clear liability of the case. Subpoenas were sent to the plaintiff's employer. A copy of the subpoena and company documents were also sent to the insurer. October 8, 2019, a follow-up letter to the plaintiff was received. April 24, 2020, the plaintiff's attorney began to confer with law enforcement about the whereabouts of the defendant. The defendant resided about 300 miles from the site of the accident in the court in Gallatin County. Then, on April 30, upon not receiving any feedback from the defendant insurer, they began to proceed to litigation, issue summons. May of 2020, DuPage County Sheriff attempted service on five separate occasions at the believed to be defendant's house. They even wrote a note on their return summons, someone is home, but they won't answer the door, thus believing that the defendant was evading service. Then, after the DuPage County Sheriff failed to serve the defendant in June of 2020, the plaintiff hired a private detective to complete service. The private detective firm was Judicial Attorney Services, Inc. in Wheaton, Illinois. The private detective attempted service on seven separate occasions. Notices were posted on the defendant's door. A car license plate was run. The registration on the car was the defendant's. Those private detectives weren't able to achieve service on the defendant. In July of 2020, they received a non-service certificate and filed the same. There is a gap of service beginning in July of 2020. This is explained in an affidavit of the employee of the law firm that was passed with the service of the summons. In March 2020, the COVID-19 pandemic started. This employee was required to go home. She has three minor children in school that she had to take care of. The affidavit also states that she had health problems from adrenal gland growth, a heart attack. All these things happened during this gap. Mr. Smith-Peters, what prevents the attorney from calling the clerk and asking for the issuance of a summons? Good question. Why do we have to rely on the affidavit of some woman who meets unfortunate circumstances? Yes, I would think that this just got inadvertently looked over. The summons could have been issued in October when the insurance company wasn't calling you back. Right. This was a personal injury clear liability. It's not uncommon for personal injury attorneys to negotiate with insurers for gaps of time during litigation and before litigation. I think it's probably... Was this a limits case? I believe it was, yes. I believe it was. The Fenton insurer may not. Then it's unlikely if you're asking for the limits and it's not clear that the insurance company is going to respond and pay you over the limits, isn't it? Sure, yes. I did this for 34 years. I have some knowledge of insurance companies. Yes, yes. It was a clear liability. It was a stop sign that was run at a four-way stop sign. In our belief, stop sign was run and hit the plaintiff's T-bone, I guess you can say. Given that, it's always advantageous to save costs and time and judicial resources. If you can, confer with the insuring. I believe there's case law to that effect. Sure, but in October, even in April, when you're conferring with the police, was there any question about the residence of this defendant from the police report? Again, this was 300 miles away. There was a name. The first sheriff that went there, I don't think they ran. No, but I'm talking about for the issuance of summons. Was there any question from the police report about the address that you needed for the summons to issue? I don't believe, Your Honor. I believe the sheriff was at the correct address. They were evading service and wouldn't answer the door. Notices were left with the defendant. I think 12 separate occasions, the sheriff or private detective went to the residence. Lights were on. I believe they said they just wouldn't answer the door and believed to be evading service. But eventually, after that gap, they were served by publication, and that's when this litigation started. The defendant filed a motion to dismiss, which the court eventually granted in September of 2022. There are seven factors the court should look at, just via case law. One is the length of time used to obtain service. Two, the plaintiff's activities. Three, the plaintiff's knowledge of the defendant's location. Four, the ease with which defendant's whereabouts could have been ascertained. Five, defendant's actual notice or knowledge of the pendency of the suit. Six, special circumstance that affect plaintiff's efforts. Seven, actual service on defendant. As the first factor, length of time in service. Courts have been cognizant in case law that time is the one factor in the seven-factor analysis. The defendant will likely argue that too much time simply passed. The Brzezinski court was mindful that timeliness was the one factor. Sporadic attempts can be sufficient diligence. Further, Stash Court, the permanent trial court, abused its discretion even after 17 months had passed from issuance of an alias summons to the sheriff after the first summons. In this case, we have 12 attempts to the defendant's residence. He's just not answering the door. Plaintiff believes that he was evading service, ignored notices left by the private detective. I don't believe it would be well thought to reward defendant for that evasion of service. And then again, the Supreme Court decision of Segal, plaintiffs simply inadvertently forgot to serve the defendant for 19 weeks. The Supreme Court in Segal stated that 103B is a very harsh penalty that's justified only when the delay is a length of time which denies the defendant a fair opportunity to investigate the circumstances. I don't think that's happened here. And here the delay was not intentional. It was not a necessary. The gap in service again, you know, as stated in the employee's affidavit, it was COVID-19, businesses were changing, schools were changing. It was a very strange time. She was required, I think she had hospital visits. She had to be at home to care for her kids. She very short period of time during the year that that service was, the big gap in service. And factor two, the activities of plaintiff, we've already laid those out, did informal discovery, subpoenaed documents, 12 separate occasions, had gone to the defendant's publication due to the evading of service by defendant. And all that time to ensure it was me. And then third and fourth factor, I believe, kind of go hand in hand, knowledge of defendant's location and the ease with which defendant's whereabouts could have been ascertained. We did have, we did have, I believe we had the right address for defendant. So factor three, knowledge of defendant's location, I do believe would sway in plaintiff's favor. He was just avoiding service. Obviously when you're evading service, you're more, it's more difficult to serve somebody, even when notes are left on door. I just asked this court not to reward the defendant for evading service on 12 separate occasions with private detectives. Mr. Smith-Peters, why did you wait three months after the order was entered to allow for publication? The order was entered August 26, 2021, and you didn't issue notice until December. Okay. August 2021. This is Gallatin County Circuit Court. They send orders by email. The order wasn't received via email by the circuit court until September 15th of 21. So you waited until December to issue the publication? The notice issued first publication was December 22nd, 2021. Yes, two months. And again, I point to the affidavit of the, of the employee that was tasked with service of summons. How many lawyers are in your office? Just one. Solo. Yeah. Yep. Solo. So I mean, it's a smaller firm. Um, and then I said that after COVID, COVID happened, or health problems happen, small area, it's hard to get legal help in an area like this. And she was in and out very rarely for a period of time there while, while our law firm was advertising for new employees. Um, but, um, and then factor, just going back to the factors, factor five, actual, um, actual notice or knowledge of pendency of the suit. I believe that weighs in favor of plaintiff as defendant insurer obviously had knowledge of the suit. And supposedly the defendant himself did give him the notices and police and private detectives knocking on his door. And I'll be quick because I have one minute remaining. Factor six, the special circumstance factor. I just asked this court to give special weight to that given the circumstances of the employee that was tasked with the service being shorthanded on employees, I do believe has already been found to be a valid circumstance in the case. Um, and then, um, yeah, given, given the employees affidavit that COVID-19 shut down all schools, she was required to go home, uh, be at home with the three children that were in school. She had a heart attack. She had other health issues, blood pressure, um, lesser circumstances have applied given the totality of the circumstances in this case as required by the this court look at, um, I would assume, I would think health issues coupled with a pandemic would qualify for a special circumstance. Uh, lastly, factor seven, actual service plaintiff did achieve actual service on the defendant. Um, again, if court believes that timeliness is their, uh, timeliness is their issue, that is the one factor in the seven factor analysis. I believe my time's up. Uh, I'm going to go back to that publication issue and I'm, I'm trying to look through the briefs to find where it was addressed, but I believe the defendant takes issue or at least brings up the point that the publication was in Gallatin County versus, I believe DuPage where the defendant resided, correct? Right, your honor. Yes, and I did, and I believe the statute says that you're to publish in the county where the action was filed. I do believe that, um, I brought, I do believe I brought that up at our hearing. There wasn't a transcript of this, of the hearing. Gallatin County doesn't have electronic recording and there wasn't a, there wasn't a typist there at that time or court reporter. Okay. Uh, well, obviously Mr. Smith-Peters, you'll be given your rebuttal time. Um, before we move on, Justice Cates or Justice McHaney, do you have any questions? No questions. No questions. All right. Well, thank you. Well, Mr. Montgomery, go right ahead. Your honors, counsel, and may it please the court. My name is Jared Montgomery and I represent the As it's been well-established, we're here on the circuit court of Gallatin County's braining of defendant's motion to dismiss pursuant to Supreme Court rule 103B. The court's ruling dismissed the claims of the plaintiff with prejudice. Now, in my time here before the court, I believe based on plaintiff's argument and this court's experience that it's well aware of rule 103B's mandates that the plaintiff exercise due diligence and effectuating service of process on the defendant. So, I'm not going to belabor that point. What I would like to do here at the beginning is address a couple of the issues raised by plaintiff or appellant during his argument. One of the issues was raised whether or not this was a limits case. Now, I don't think it will stand as any surprise that the defendant and insurer strongly dispute this is a limits case. Essentially, the limits was justified by plaintiff's counsel by arguing that the plaintiff because the accident would no longer be able to obtain a higher position at work. He was still able to work but not to be able to obtain a position he wanted to. No proof was given of that and I think it stands to reason that the defendant or the insurer is not going to pay limits on a matter when the proof or the evidence to support such a claim is not provided. Also, plaintiff... So, Mr. Montgomery, why wouldn't the insurance company write a letter or at least return a phone call and say that? Your Honor, I can't answer that. I don't know. If an insurance company doesn't write a letter back or make the phone call, is that supposed to put the plaintiff lawyer on notice that they should issue the summons? I think it should put them on notice when you've written two letters and there has been no response, especially, as Your Honor noted, in October when there had been no response. I wouldn't fault the plaintiff if immediately after, in the weeks after, he didn't initially issue a summons when there hadn't been any answer, giving the insurance time to respond. However, when it was clear the insurance was not responding to the claim, it was imperative on the plaintiff's counsel at that time to at least issue an initial summons. And as the court noted that once it was clear they were not issuing, another six months went by when no summons was even issued. It wasn't until eight months after the original complaint was filed that initial summons was issued. And I think at that time it was imperative on plaintiff's counsel to have initial summons issued. Now, Your Honor, plaintiff's counsel cited a number of cases in support of his position. Which is most important? Is it the eight months between October 8th and April 30th when summons was issued? Or is it when the publication occurs? Which delay is most important in your view? Your Honor, I think they'll have to be taken in totality of circumstances. Plaintiff stated, and I would add to that, the 13 months between when the first alias summons was issued and before a notice of publication was even sought. Plaintiff's counsel filed the notice that service had been unsuccessful to court, so he was well aware that service had not been issued. In the 13-month period, and we're talking from July, I believe, 2020 through August 2021, or 21 to 22, there was no action taken on the part of the plaintiff's counsel whatsoever. And there's never been any, I believe, satisfactory explanation knowing that no service had been effectuated, why there was a 13-month gap. If plaintiff truly believed that the defendant was evading service, which we dispute, but if they truly believed they could have taken steps at that point during any time during that 13-month period as well to effectuate service, such as filing a motion with the Circuit Court of Gallatin County asking that it should be served by notice of publication or by other means. But during that time, nothing was done. That coupled with the fact that there was an eight-month gap between the filing of the current plaintiff and the issuance of initial summons, and then an notice of publication was granted by the Circuit Court and the publication was actually filed, leads us to the current matter and the totality of the circumstances that we now have 28 months between the filing of the original complaint and service of process on the defendant. The defendant was not even aware that any notice of publication had been granted and that she'd been served by notice of publication or that service had been effectuated up until such time as the plaintiff's counsel sent an email to defendant's insurer demanding that she enter her appearance immediately or threatening to default her. So, I think when looking at which is most important, I think they're all important because all of them put together lead us to the current situation we're in here today, Your Honor. Well, what about the fact that the defendant, it's claimed, refused service of process after multiple attempts. Should he be rewarded for that, or the defendant be rewarded for that? Your Honor, I don't believe a defendant should be rewarded for evading service. However, Your Honor, I don't believe the defendant was evading service. During the entire 28-month period, only during two months, was plaintiff's counsel even actively attempting to serve the defendant. Now, defendant asserts he had no notice at any time that any processor was attempting to effectuate service on her. Now, what I would do with that is I would direct this court to the First District's decision in Silverberg where it made clear that while a defendant's avoidance of service could be relevant to a 103B analysis insofar as his or her evasion makes him more difficult to locate, the focus of a Rule 103B inquiry is not the defendant's subjective intentions. Instead, the standard is one of objective reasonableness on the part of the plaintiff. I don't believe it's objectively reasonable for filing a lawsuit just before the standard of limitations is set to expire and then doing nothing for 26 out of the 28 months it asserts to obtain service. Your Honor, we strongly dispute there was any evasion of service, and if it did, it was imperative on it if he believed at that time the service was being evaded to take alternative means or something else during the entire 13-month period where this case set idle to obtain any kind of service of process on the defendant. There was nothing in Plaintiff Acknowledges that made this defendant difficult to locate. Her address was located on the only crash report and it was known to the plaintiff and her attorney from the outset of this litigation. So I would assert, too, while we disagree that there was any evasion of service, that the objective intentions of the plaintiff do not demonstrate in any way a due diligence in effectuating service of process on the defendant. Now, Your Honors, Plaintiff's counsel cited a number of cases in his argument in support of his motion that the length of time it was needed to obtain service of process on the defendant was reasonable. He first cited to the Brzezinski case and stated that that stands for the notion that he exercised due diligence case. I would assert right from the beginning the Brzezinski case is factually distinguishable. In Brzezinski, they immediately sought initial summons, and the firm was actively working the file during the time that between the initial summons and alias summons was issued. That included responding to motions to dismiss as to the other defendants. That's fundamentally different in this case where no initial summons was sought for eight months, and this case set idle for 26 out of the 28 months. Plaintiff's counsel also cited to the Stasch case, citing that there was 17 months, and that was deemed due diligence. Well, in Stasch, there was an initial summons, again, initially sought, and then the problem in Stasch was that the defendant failed to maintain his current address with the Segregated States Office, and the wrong driver's license number was noted on the accident report. Again, that's fundamentally different here. We had 28 months, no initial summons ever sought, and the address was clearly listed on the Illinois crash report and known to the plaintiff during the entire time. Plaintiff also cited to the case of Siegel, done by the Illinois Supreme Court, where it was determined that 19 weeks was sufficient. Your honors, if it was just simply 19 weeks to less than five months, you wouldn't be here right now because that time period wouldn't be sufficient, but we're here because it's 28 months like this, and I would point to the case that not a week after Siegel was decided, the Supreme Court decided the case of Womack where the time was nine months, and in that case, the court defied that nine months showed an dismissal for lack of due diligence. The court in Womack was well aware of what was going on in Siegel and even cited it to its opinion, so while it didn't think that five months was sufficient, it clearly thought that nine months was sufficient. Now, your honors, plaintiff's counsel went over the factors one through seven that guide a court's determination whether or not the plaintiff has served. Factors one and seven, the length of time to obtain service of process and actual service on the defendant. I don't believe either one of them supports the finding of due diligence on the part of the plaintiff. We have 28 months between filing of the plaintiff and service on the defendant. Defendant was never actually served. They were served by notice of publication. The matter was simply ignored for over two years while no action was taken. As to factor number two, the activities of the plaintiff, I think the record clearly showed there was little to no activity on the part of the plaintiff in attempting to serve the defendant. For 26 of the 28 months, the case set idle. No initial summons was sought for eight months. There's a 13-month gap after the alias summons to when a notice of publication was sought and an additional four-month gap after the motion for notice of publication was granted and it was finally published with the Gallatin Democrat. As to factors three and five, plaintiff's knowledge of defendant's whereabouts and the ease it could have been attained, plaintiff asserted that because he knew of the defendant's location that the 28-month gap argues in his favor. I would stage just the opposite, your honors, that when the location of the defendant is relatively known and completely found, the longer it takes to actually serve the defendant and issue an initial summons weighs in favor of the defendant, not the plaintiff. Your honors, as to number five, actual knowledge of the penance of the action due to ineffective service of the defendant, defendant had no knowledge of the action due to ineffective service. Her only knowledge she'd ever been served is when she received an email from plaintiff's counsel threatening to default her. And finally, your honor, special circumstances, I would assert that there are no special circumstances in here. While I certainly sympathize with plaintiff's counsel's employee's predicament, nothing prevented plaintiff's attorney from reaching out and seeing that initial summons was issued and it's imperative on the attorney himself or herself to have and ensure the summons is properly issued and promptly. Furthermore, your honor, Mr. Montgomery, I want to ask you a question. When the plaintiff filed the lawsuit in August of 2019 and sent a demand letter to the insurer, it indicates that a subpoena Dukas-Takum was also sent, or at least a copy was sent to the insurer. Doesn't that put the insurer on notice that a lawsuit has been filed? Your honor, there was a demand package and it was well known to the insurer that the lawsuit had been filed. So the insurance company, knowing that they need to respond in 30 days to a lawsuit, sits on their hands and waits. Your honor, the issue of having to respond does not become active until such time as the plaintiff serves the defendant. Right. But basically, you know that your client, the insurance company's client has been sued and so you sit on your hands and you wait. Should that be rewarded? Your honor, what I would cite this court to in this case is two cases. One is from the Illinois Supreme Court and one is from just recently decided by the Fifth District. And in the first case I'm going to cite is the Womack case, which I mentioned briefly before, and that's very similar to what your honor just mentioned. In that case, it was undisputed that the insurance company or the defendant had knowledge of the suit, but plaintiff waited nine months to effectuate service of process on the defendant. The Supreme Court found there was a lack of due diligence and in their decision stated that while the issue of knowledge may be relevant, it will not preclude a finding of lack of due diligence when there's an obvious lack of due diligence. And in that case, we were dealing with nine months. Here, we're dealing with 28 months. The second case I would cite this court's opinion to is one issued by this court just last year, Shamhart v. Hatton. And in that case, it was the same way. The defendant's insurer had knowledge of the suit, but we had a 33-month gap. This court, again, affirmed the ruling of the circuit court dismissing it for lack of due diligence. Based on citations to the Womack case stating that where there is an obvious lack of due diligence, knowledge only partly ensure the defendant will not save the plaintiff. And I believe that's eerily similar in what's indicative here. I believe that when we had 28 months, the knowledge of the part of the defendant's insurer does not save or justify that gap. What's the site for that case? The site is 210190. It was unreported. It is not precedent, but it is persuasive authority, Your Honor. Okay. Thank you. And I see my time is up. Thank you, Your Honors. Justice McHaney or Justice Cates, any final questions before we go to rebuttal? No questions. No. All right. Well, thank you, Mr. Montgomery. Go right ahead. Oh, you're muted, sir. Sorry. Sorry about that. Thank you, Your Honor. That's no surprise. Timeliness is the biggest argument of the defendant. And I will remind this court that is but one factor in the I would request the court to look at the facts contained in my brief. It is bullet for bullet timeline of the things that went on from August 2019 all the way to the time of publishing for service in 2020. Sorry, 2021. So I just request the courts be cognizant of that. And also the give way to the special circumstance that employee that was tasked with the service of summons. It's very difficult for her to get these things done given the health circumstance that she was facing along with a pandemic. And I can think of no greater special circumstance than the one that was before this court. And with that, I would just say it plain if I do believe actively due to serving the defendant, given the totality of the circumstances as required by Supreme Court Rule 103 B. If the court is concerned with the timeliness of the service, then the special circumstance should apply. Thank you, Your Honors. Thank you, counsel. Before we let you go, Justice McCain, Justice Page, do you have any last questions? No questions. No further questions. Well, obviously, counsel, we will take the matter under advisement. We will issue an order in due course.